OPINION
{¶ 1} Appellant Angela Scott appeals her convictions and sentences, in the Morgan County Court of Common Pleas, on several drug-related felony offenses, set forth as follows:
 {¶ 2} Count 2: Complicity to trafficking in marihuana in the vicinity of a juvenile.
 {¶ 3} Count 3: Complicity to trafficking in crack cocaine.
 {¶ 4} Count 4: Complicity to trafficking in marihuana.
 {¶ 5} Count 5: Complicity to trafficking in crack cocaine.
 {¶ 6} Count 8: Trafficking in crack cocaine.
 {¶ 7} Count 9: Trafficking in marihuana in the vicinity of a juvenile.
 {¶ 8} Count 10: Possession of cocaine.
 {¶ 9} Count 11: Engaging in a pattern of corrupt activity.
 {¶ 10} The relevant facts leading to this appeal are as follows.
 {¶ 11} Between June 6, 2003 and November 23, 2004, the Morgan County Sheriff's Department conducted an undercover drug trafficking investigation of appellant, her husband Gary Scott, and two other individuals, Christopher Mayle and Jamie Potts.
 {¶ 12} On June 6, 2003, Deputy Tom Jenkins of the Morgan County Sheriff's Department received information from a Washington County detective that a confidential informant had purchased crack cocaine at the residence of appellant and Gary Scott on Route 555 in Chesterhill. The confidential informant was sent to the Scott home, wearing a wire transmitter. According to Deputy Jenkins, appellant stated to the confidential informant that "Boney" (a nickname used by Gary Scott) was on his way to pick up some "shit" at a different location, which the deputy interpreted as slang for crack cocaine. Tr. at 149-150, 155. On the basis of that conversation, Morgan County Sheriff's deputies obtained a warrant, although the warrant was never served due to manpower issues. Tr. at 158.
 {¶ 13} A new warrant to search appellant's and Gary's home was served on November 7, 2003, and $250.00 cash was taken from Chris Mayle, a co-defendant of appellant, and the only person present at the time of the search of the Scott residence. A number of items were seized from the home including cash, guns, jewelry, clothing and ashtrays. Among the items was a 44.53 grams of marijuana, secreted in a box discovered in a bedroom. Additional marijuana was found on the person of Christopher Mayle.
 {¶ 14} Amy Nelson, who was working for the Morgan County Sheriff's Department as a confidential informant, testified that in late March, 2004, she went to the Scott home to purchase marijuana. Tr. at 375. On Nelson's first visit, Gary told her he didn't have any at the moment, but she should come back in a couple of days. Id. at 375-76. Ms. Nelson returned to the Scott home on March 31, 2004 and asked if Gary was home. Id. at 377-78. While waiting for him to come to the door, Ms. Nelson observed a 3 or 4 year old child in the home. Id. When Gary came to the door, Ms. Nelson asked him if she could purchase some marijuana. Id. at 378-379. Ms. Nelson watched as Gary walked to a couch where she could see three bags of marijuana. Id. Gary retrieved one of the bags and handed it to Ms. Nelson. Id. at 379-380. Ms. Nelson gave him $10.00 and left the residence. Id. This "buy" became the basis for count two of the indictment, complicity in trafficking marihuana in the vicinity of a juvenile.
 {¶ 15} On April 15, 2004, the same confidential informant returned to the Scott residence and made two separate buys from Christopher Mayle. In the first instance, the informant bought marijuana and crack cocaine from Mr. Mayle. In the second, she bought crack cocaine from him. Neither the appellant nor Gary was present at the time. These "buys" form the basis for counts three, four and five of the indictment, complicity to sell crack cocaine, complicity to sell marihuana, and complicity to sell crack cocaine, respectively.
 {¶ 16} According to this same confidential informant, Mayle and Potts sold these drugs from the Scott residence, but she did not see where Mayle went to get them within the house, and Potts went somewhere outside the house to retrieve the crack cocaine he sold her. According to the confidential informant, "Chris was just always there [at the Scott's residence], it was like he lived there."
 {¶ 17} Based upon this "buy" Deputy Tom Jenkins obtained a second warrant to search the Scott's home. They retrieved cash from the appellant and Gary, a bank card, some marijuana from Christopher Mayle, and some other items suspected of being cocaine. The warrant was served on November 23, 2004. These transactions formed the basis for counts eight and nine of the indictment. Count eight was amended during trial to trafficking in crack cocaine. Count nine charged trafficking in marijuana in the presence of a minor.
 {¶ 18} Count ten of the indictment alleged possession of cocaine. Count eleven of the indictment alleged involvement in a pattern of corrupt activity, as further discussed infra.
 {¶ 19} Appellant was indicted on December 8, 2004, along with her husband Gary and Christopher Mayle.
 {¶ 20} A two-day jury trial was commenced on September 29, 2005. At the conclusion of the trial, the jury found appellant guilty on counts 2, 3, 4, 5, 8, 9, 10, and 11. Three remaining counts (i.e., one, six, and seven), which we need not set forth in this opinion, were returned by the jury as "not guilty."
 {¶ 21} The matter came before the court for sentencing on January 3, 2006. After conducting the sentencing hearing, which included the court's review of the pre-sentence investigative report, appellant was sentenced to seven years on count eleven (engaging in a pattern of corrupt activity) and an additional thirty-five months on the remaining counts, some of which were ordered to be served consecutively to each other. Her aggregate sentence was 119 months (nine years, eleven months) in prison.
 {¶ 22} Appellant filed a notice of appeal on January 12, 2006. She herein raises the following three Assignments of Error:
 {¶ 23} "I. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT (SIC) AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 24} "II. DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNTIED (SIC) STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION BECAUSE COUNSEL FAILED TO TIMELY OBJECT TO THE INTRODUCTION OF INADMISSIBLE EVIDENCE WHICH WAS HIGHLY DAMAGING AND UNFAIRLY PREJUDICIAL.
 {¶ 25} "III. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE OHIO AND FEDERAL CONSTITUTIONS (SIC) WHEN IT SENTENCED HER BASED UPON POST-CONVICTION FACT-FINDINGS MADY (SIC) BY THE COURT, NOT FOUND BY A JURY."
 I. {¶ 26} In her First Assignment of Error, appellant argues her convictions are not supported by the sufficiency of the evidence and are against the manifest weight of the evidence. We disagree.
 Sufficiency of the Evidence {¶ 27} In considering an appeal concerning the sufficiency of the evidence, our standard is as follows: " * * * [T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 Complicity to Trafficking Counts {¶ 28} Appellant first challenges the sufficiency of the evidence for her various complicity counts.
 {¶ 29} Ohio's complicity statute, R.C. 2923.03, reads in pertinent part as follows:
 {¶ 30} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 31} "(1 ) Solicit or procure another to commit the offense;
 {¶ 32} "(2) Aid or abet another in committing the offense;
 {¶ 33} "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
 {¶ 34} "(4) Cause an innocent or irresponsible person to commit the offense.
 " * * *" {¶ 35} The issue before us focuses on the "aiding or abetting" subsection, i.e., R.C. 2923.03(A)(2). To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime. State v. Johnson (2001), 93 Ohio St.3d 240,754 N.E.2d 796, syllabus. Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not aiding or abetting. State v. Mullins (1986), 34 Ohio App.3d 192,200, 517 N.E.2d 945, citing Columbus v. Russell (1973),39 Ohio App.2d 139, 140, 316 N.E.2d 897. However, Ohio law recognizes that circumstantial evidence is sufficient to prove the essential elements in a criminal case. State v. Willey (Nov. 24, 1998), Guernsey App. No. 98 CA 6, 1999 WL 3962, citing State v. Hopfer (1996), 112 Ohio App.3d 521,558, 679 N.E.2d 321. "The only notable exception to this principle is where the inference between the facts proven and the facts sought to be proven is so attenuated that no reasonable mind could find proof beyond a reasonable doubt." Id., citing State v. Griffin (1979),13 Ohio App.3d 376, 377-378, 469 N.E.2d 1329.
 {¶ 36} In the case sub judice, during each of the purchases by the confidential informants, the illegal drugs were purchased from Gary Scott, Christopher Mayle, or Jamie Potts from either inside or immediately outside the residence of appellant and Gary Scott. Appellant points out that at the first buy, made by C.I. Amy Nelson on March 31, 2004 (count 2), Gary Scott answered the door and sold Nelson $10.00 worth of marihuana. Tr. at 377-382. At trial, Nelson could not recall if appellant was present at the scene of the buy. Tr. at 378-379.
 {¶ 37} During the next buys of April 15, 2004 (counts 3, 4, and 5), Nelson was met at the door of the Scott residence by Christopher Mayle, who proceeded to sell Nelson marihuana, cocaine, and crack cocaine. Tr. at 382-394. Nelson indeed testified that appellant and Gary Scott were leaving the premises in an automobile when she first arrived on April 15, 2004. Tr. at 385.
 {¶ 38} Finally, the drug buys of November 21, 2004 (counts 8 and 9) were made by C.I. Brenda Waters, who testified that she purchased crack cocaine and marihuana from Gary Scott and Chris Mayle. Tr. at 420-436. At trial, she was unable to identify appellant. Tr. at 434.
 {¶ 39} However, the record reveals that the Morgan County Sheriffs Department executed two search warrants during the time parameters in question, both of which resulted in a cache of drug-related evidence in the Scott residence, particularly in the Gary's and appellant's master bedroom. The testimony during trial established that this master bedroom was secured by a deadbolt lock that required a key to enter. Tr. at 270. Upon inquiry by the officers conducting the search, Christopher Mayle informed them that the room was appellant and Gary's, and they had the key needed to enter the bedroom. Id. at 274.
 {¶ 40} During the first search on November 7, 2003, the officers found several firearms in the master bedroom, along with a total of $4,313.00 in cash in various locales in the bedroom and $3,200.00 in cash in a pair of pants under the bed. Officers also discovered marihuana and plastic sandwich bags in the master bedroom at this time. Gary's and appellant's income tax returns were also seized. Id. at 264. Those records indicated that the couple's reported income for the year 2000 was $12,423.00; for the year 2001 their income was listed as $3,355.00 and for the year 2002 the couple's income was listed on the tax return as just $3,128.00. Id. at 265.
 {¶ 41} During the second search on November 22, 2004, at which time appellant, Gary, appellant's eighteen-year-old daughter, and Christopher Mayle were at the residence, officers found a baggy of white powder and a baggie of white rock substance in appellant's pocket. The officers also located more marihuana and some marihuana seeds in the master bedroom's armoire, and suspected marihuana was found at the head of the bed, in the dresser, and in the bedroom's safe. The officers further found a "cellophane wrapper containing a white substance at the end of the bed with a white rock substance believed to be crack cocaine." Six more firearms were also recovered in the bedroom. A set of scales was found in the master bedroom, along with $5,000 cash in the safe. Two more sets of scales were found in the "back" bedroom, and three police/fire radio scanners were discovered in the kitchen. Other suspected drugs and related paraphernalia were discovered in the residence at this time. Tr. at 461-464. During the search, appellant had admitted to the officers that they would find drugs and cash in the master bedroom safe. Tr. at 470.
 {¶ 42} Upon review, we find the evidence, taken in its totality, was sufficient to prove appellant was more than just an innocent or acquiescing bystander, but instead participated as an aider and abettor of the trafficking activities at the Scott residence.
 EPCA Count {¶ 43} Appellant secondly challenges the sufficiency of the evidence for the count against her of engaging in a pattern of corrupt activity, i.e., count 11.
 {¶ 44} R.C. 2923.32(A)(1) states as follows: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." R.C. 2923.31(C) defines "enterprise" to include "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." " `Enterprise" includes illicit as well as licit enterprises." Id. Finally, R.C. 2923.31(E) reads: " `Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."
 {¶ 45} "The General Assembly has determined that if a defendant has engaged in two or more acts constituting a predicate offense, he or she is engaging in a pattern of corrupt activity and may be found guilty of a RICO violation." State v. Schlosser (1997), 79 Ohio St.3d 329, 335,681 N.E.2d 911. (Emphasis omitted.) In order to establish the existence of an "enterprise" under Ohio's RICO Act, there must be some evidence of: (1) an ongoing organization, formal or informal; (2) with associates that function as a continuing unit; and (3) with a structure separate and apart, or distinct, from the pattern of corrupt activity. State v.Teasley, Franklin App. Nos. 00AP-1322, 00AP-1323, 2002-Ohio-2333, ¶ 53, citing State v. Warren (1992), Franklin App. No. 92AP-603, andUnited States v. Turkette (1981), 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d246.
 {¶ 46} Appellant first argues, without caselaw support, that she was not a "principal offender" in the trafficking activity at the Scott residence, and thus her EPCA conviction is fundamentally flawed. Appellant's Brief at 7. However, we have previously concluded that appellant's complicity to trafficking convictions were supported by sufficient evidence. Ohio's complicity statute, R.C. 2923.03, states in pertinent part as follows: "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender." (Emphasis added). We thus find appellant's attempt to distinguish "principal" and "complicitor" for purposes of an EPCA prosecution to be without merit.
 {¶ 47} Appellant secondly argues, citing Teasley, supra, that the State failed to establish the existence of an ongoing organization separate and distinct from the trafficking activities which formed the pattern of corrupt activity. See Teasley at ¶ 54. However, upon review, we find the evidence in this case demonstrated an overarching trafficking enterprise involving not only appellant and Gary Scott, but Jamie Potts and Christopher Mayle, using the Scott residence as what the State aptly labels a "base of operations."
 {¶ 48} We therefore conclude both the complicity to trafficking and EPCA convictions were supported by sufficient evidence.
 Manifest Weight {¶ 49} In considering an appeal concerning the manifest weight of the evidence, our standard is as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered ." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 50} As previously recited, the State introduced, inter alia, the testimony of both confidential informants, as well as lengthy testimony by two sheriff deputies, one of whom handled the search warrant and one of whom was the chief investigator in the case. Although appellant does not articulate the specifics of her manifest weight argument (see App.R. 16(A)(7)), we have reviewed the record and hereby hold appellant's convictions were not against the manifest weight of the evidence.
 {¶ 51} Accordingly, appellant's First Assignment of Error is overruled.
 II. {¶ 52} In her Second Assignment of Error, appellant argues she was denied the effective assistance of counsel based on her defense counsel's failure to object certain evidence presented by the State. We disagree.
 {¶ 53} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675, 693N.E.2d267.
 {¶ 54} The first and most compelling of appellant's instances of claimed ineffective assistance is a roughly fifteen-page section of trial transcript wherein the prosecutor asks Deputy Jenkins a number of expansive questions pertaining to the evidence, just one of which was objected to by defense counsel. See Tr. at 495-511. The prosecutor first asked the deputy to explain to the jury "what evidence has been presented during this trial that would suggest that a criminal enterprise did in fact exist." Tr. at 495. The deputy responded, inter alia, that appellant and co-defendant Gary Scott had "Chris Mayle and Jamie Potts working for them, so they were being kind of like the bosses of a store and Chris Mayle and Jamie Potts being like the cashier's [sic]." Id. The prosecutor proceeded to ask "[w]hy Gary Scott was complicité [sic] in these criminal acts[?]" Tr. at 500. After a lengthy response by the deputy, the exchange continued in pertinent part as follows:
 {¶ 55} "Mr. Howdyshell: Now the jury will be instructed but the complicity statute itself says to knowingly solicit for, aid or abet another. So it is pretty obvious where one person goes and gets another person to actually sells (sic) the crack that they are aiding and abetting.
 {¶ 56} "Deputy Jenkins: Correct.
 {¶ 57} "Mr. Howdyshell: The sale urn, what about the incidents where that didn't happen. What leads you to believe that — that Gary knew what was going on in his house?
 {¶ 58} "Deputy Jenkins: Because he is getting, he is reeking (sic) the benefits urn, Chris is living there taking care of business while Gary goes out and does his thing. Gary's (inaudible) when he is (inaudible). Chris is going to say that I sold it and then Gary took care of the money I mean if you are actually up high enough you don't actually have to use hand to hands to be complicité, (sic)
 {¶ 59} "Mr. Howdyshell: So if we were[. . .]
 {¶ 60} "Deputy Jenkins: I'm sorry.
 {¶ 61} "Mr. Howdyshell: If we were to — to consider Chris Mayle as the primary sales person then Gary was providing the shop for Chris to work from?
 {¶ 62} "Deputy Jenkins: Correct he (inaudible).
 {¶ 63} "Mr. Howdyshell: Now let's address this same issue only Angela. We don't have her selling to anybody.
 {¶ 64} "Deputy Jenkins: This is correct.
 {¶ 65} "Mr. Howdyshell: We don't have her to the best of my knowledge and through telephone conversations procuring in going next door and getting Chris or Jamie?
 {¶ 66} "Deputy Jenkins: Correct.
 "* * * {¶ 67} "Mr. Howdyshell: Well were there any deals over (sic) attempted or set up through Angie in any way?
 {¶ 68} "Deputy Jenkins: We called the house a couple of times and a female answers and we don't know that Angie is the one that actually answers the phone.
 {¶ 69} "Mr. Howdyshell: What indication is there that Angela knew what was going on inside the house?
 {¶ 70} "Deputy Jenkins: Well obviously if you are going to make a certain amount of money you shouldn't have some of the items they had. But in on their 2004 November 2004 Search Warrant she had crack cocaine, cocaine in her pocket. She had a large sum of money in her pocket when we executed the Search Warrant in the house and it kind of tied her into the complicity of being just as deeply involved and still reeking (sic) all the benefits so (sic) what everyone is doing in her house." Tr. at 501-504.
 {¶ 71} Ohio courts have recognized that objections tend to disrupt the flow of a trial and are often considered technical and bothersome by the fact-finder; hence, competent counsel may reasonably hesitate to object. See State v. Jackson, Cuyahoga App. No. 86105, 2006-Ohio-174, ¶ 88, citing State v. Campbell, 69 Ohio St.3d 38, 53, 1994-Ohio-492, and Jacobs, Ohio Evidence (1989), at iii-iv.
 {¶ 72} Nonetheless, "reviewing courts * * * must keep in mind that different trial counsel will often defend the same case in different manners." State v. Samatar, 152 Ohio App.3d 311, 787 N.E.2d 691,2003-Ohio-1639, ¶ 88.
 {¶ 73} Evid.R. 701 provides as follows: "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Our reading of the transcript portion at issue suggests that defense counsel perhaps should have objected at points to keep the deputy from straying into over-speculation and the presentation of his own legal conclusions. However, upon review of the record, including the evidence analyzed in appellant's first assigned error, we are unpersuaded that appellant was prejudiced in this regard by her trial counsel's performance, such that the outcome of the trial would be suspect. Strickland, supra.
 {¶ 74} Appellant also urges that two other instances of ineffective assistance should be recognized: failure to object to Deputy Jenkins's testimony of a wire interception of appellant's statement to confidential informant "Mark" on June 6, 2003, and failure to object to a presentation to the jury of the several firearms seized from the Scott residence. Nonetheless, as debatable trial tactics alone do not establish ineffective assistance of counsel (see State v. Conway,109 Ohio St.3d 412, 430, 848 N.E.2d 810), and given that appellant and her husband were being tried jointly, with overlapping evidence, we find no merit in these additional claims of ineffective assistance.
 {¶ 75} Appellant's Second Assignment of Error is overruled.
 III. {¶ 76} In her Third Assignment of Error, appellant challenges her sentences pursuant to State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856.
 {¶ 77} Appellant herein was sentenced on January 3, 2006 to "more than minimum" prison terms on all eight of the counts for which she was convicted, some of which were ordered to be served consecutively. InFoster, supra, which was decided on February 27, 2006, the Ohio Supreme Court found certain provisions of Ohio's sentencing statute unconstitutional pursuant to Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403, because said provisions required judicial factfinding to exceed the sentence allowed simply as a result of a conviction or plea. These included the provisions for a more than minimum sentence under R.C. 2929.14(B), as well as consecutive prison terms under R.C. 2929.14(E)(4).
 {¶ 78} To remedy Ohio's felony sentencing statutes, the Ohio Supreme Court severed the Blakely-offending portions that either create presumptive minimum or concurrent terms or require judicial factfinding to overcome the presumption. Foster at ¶ 97. The Court concluded " * * * that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at ¶ 100.
 {¶ 79} We find appellant's sentencing is based upon at least two unconstitutional statutory provisions now deemed void. Therefore, we are persuaded under these circumstances to remand this matter to the trial court for a new sentencing hearing.
 {¶ 80} For the foregoing reasons, the judgment of the Court of Common Pleas, Morgan County, Ohio, is hereby affirmed in part, reversed in part, and remanded for a new sentencing hearing.
By: Wise, P. J. Gwin, J., and Farmer, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Morgan County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Costs to be split between appellant and appellee.