[Cite as *State v. McGowan*, 2019-Ohio-2554.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin J. |
| -vs- | |
| | Case No. 2018CA00075 |
| JONATHAN C. MCGOWAN | |
| Defendant-Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:     Appeal from the Stark County Court of
Common Pleas, Case No. 2018CR0283A


JUDGMENT:                              Affirmed

DATE OF JUDGMENT ENTRY:        June 25, 2019


APPEARANCES:


For Plaintiff-Appellee                          For Defendant-Appellant

JOHN D. FERRERO                         GEORGE URBAN
PROSECUTING ATTORNEY              116 Cleveland Avenue N.W.
                                                808 Courtyard Centre
KATHLEEN O. TATARSKY              Canton, Ohio  44702
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio  44702-1413

*Hoffman, J.*

{¶1}   Defendant-appellant Jonathan C. McGowan appeals his convictions and sentence entered by the Stark County Court of Common Pleas, on three counts of attempt to commit murder with repeat violent offender and firearm specifications; three counts of felonious assault with repeat violent offender and firearm specifications; two counts of domestic violence; one count of having weapons while under disability; one count of discharge of a firearm on or near prohibited premises; one count of improperly handling firearms in a motor vehicle; and one count of child endangering, following a jury trial. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}   On February 20, 2018, the Stark County Grand Jury secretly indicted Appellant on three counts of attempt to commit murder, in violation of R.C. 2903.02(A), with repeat violent offender and firearm specifications; three counts of felonious assault, in violation of R.C. 2903.11(A)(2), with repeat violent offender and firearm specifications; two counts of domestic violence, in violation of R.C. 2919.25(A); one count of having weapons while under disability, in violation of R.C. 2923.13(A)(2); one count of discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3)(C)(1); one count of improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(A); one count of child endangering, in violation of R.C. 2919.22(A); and one count of menacing by stalking, in violation of R.C. 2903.211(A)(1(B)(2)(b).

{¶3}   Appellant appeared before the trial court on March 2, 2018, and entered a plea of not guilty to the Indictment.  Appellant filed a motion to suppress on March 20, 2018, arguing the trooper failed to advise him of his *Miranda* rights when he was detained in Summit County Jail on an unrelated charge; therefore, any statements Appellant made

to the trooper should be suppressed. The trial court conducted a hearing on Appellant's motion on April 25, 2018. Trooper Daley with the Ohio State Highway Patrol testified at the hearing and submitted the audiotape of the interview he conducted with Appellant at the Summit County Jail. Following the hearing, the trial court denied the motion to suppress and the matter proceeded to jury trial on April 30, 2018. The repeat violent offender specifications were tried to the bench.

{¶4} Thaddaeus Rosser, Lakisha McGowan's brother, testified, Lakisha and Appellant were married on February 23, 2010. Lakisha and Appellant had a son, Jonathan McGowan, Jr., together prior to their marriage. Rosser indicated, in January, 2018, Lakisha and Appellant were separated and were living apart. Lakisha was living on Evans Street in Akron, Ohio. Rosser planned to drive Lakisha and Jonathan, Jr. to South Carolina on Sunday, January 14, 2018, "[t]o get her to a safer place." Trial Tr., Vol. II at 163. His sister had rented a U-Haul with a trailer in order to transport her SUV. They intended to depart Akron at 5 a.m. on January 14th, but overslept.

{¶5} Rosser, who was driving the U-Haul, proceeded south on Interstate 77. Jonathan, Jr. sat between Rosser and Lakisha on the cabin bench seat. As they approached the Hall of Fame Bridge, Rosser heard at least four loud "booms". The driver's side window shattered after the first or first couple of booms, and subsequently the window completely broke. Rosser was unable to determine what other vehicles were on the highway at the time. Pieces of glass and mirror struck Rosser in the face and hand. Rosser heard Jonathan, Jr. screaming. Rosser maneuvered the U-Haul off the highway and pulled into a gas station.

{¶6} Rosser examined the U-Haul to determine what had occurred. He observed

holes in the rear view mirror and the driver's side door.  While Rosser was examining the vehicle, Lakisha called the police.  Rosser did not receive medical attention. Paramedics tended to Jonathan, Jr., and he was subsequently transported to the hospital.

{¶7}   On cross-examination, Rosser testified he advised Trooper Daley he had seen a red and silver pick-up truck travel past the U-Haul following the incident. Rosser acknowledged he did not see the individual who shot at them.

{¶8}   Ohio State Highway Patrol Trooper Justin Daley was assigned to investigate the January 14, 2018 shooting incident on Interstate 77 South, near mile post 110.  When he arrived at the Canton Post, he spoke with the responding officers. Trooper Daley briefly spoke with Rosser, Lakisha, and Jonathan, Jr., then examined the U-Haul. The trooper observed bullet holes in the driver's door area, the left rear view mirror, and inside the passenger compartment.  After his initial view of the U-Haul, Trooper Daley interviewed Rosser and Lakisha.  He returned to the vehicle, photographed it from all sides and began to process it.  Trooper Daley determined four separate rounds hit the U-Haul and the transported vehicle.  Specifically, one shot through the side mirror, one shot through the driver's side door, one shot through the driver's headrest, and one shot through the passenger compartment.  A .380 caliber bullet was recovered from the cargo area, which was taken into evidence for testing.

{¶9}   Trooper Daley learned Appellant had been arrested on unrelated charges and was being held in the Summit County Jail.  The trooper interviewed Appellant there on January 17, 2018.  Prior to commencing the interview, Trooper Daley informed Appellant he was not under arrest for the U-Haul shooting and was free to leave the interview at any time.  Trooper Daley did not advise Appellant of his *Miranda* rights.

Although an audiotape of the interview was played at the suppression hearing, the state did not play the audiotape at trial. Trooper Daley did not testify as to the substance of the interview, but merely stated he met with Appellant on January 17, 2018.

{¶10} As part of his investigation, Trooper Daley obtained and listened to recordings of phone calls to and from Appellant while he was in the Summit County Jail. Calls between Appellant and Adam McGowan ("McGowan"), his brother, as well as calls between Appellant and Angela Briere, his girlfriend at the time, were played for the jury. During his calls with Briere, Appellant made numerous references to sandwiches, such as the one he had eaten that morning, the fact he was hot because he had eaten too many sandwiches, and also whether Briere had disposed of the "moldy sandwich". Trooper Daley explained the term "sandwich" is slang for firearm. The trooper also learned Briere, at Appellant's request, had given the gun Appellant used during the U-Haul shooting to McGowan. With this information, Trooper Daley obtained a warrant to search McGowan's residence.

{¶11} On January 29, 2018, law enforcement officers, including Trooper Daley, executed the search warrant at McGowan's apartment in Cuyahoga Falls, Ohio. Officers discovered a silver gray, hinged lid lockbox, containing a black Taurus .380 caliber handgun, a silver Phoenix Arms pistol, .380 caliber ammunition, and .22 caliber long rifle bullets. Trooper Daley personally delivered the Taurus handgun to the Ohio Bureau of Criminal Investigation ("BCI").

{¶12} Adam McGowan testified Briere had delivered the lockbox containing the guns and ammunition to his apartment sometime in January, 2018. At the time, McGowan was unaware of the contents of the box. McGowan subsequently learned of the contents

and informed Appellant he had thrown the black gun into the gorge. McGowan acknowledged he did not actually dispose of the gun, explaining after he learned what Appellant had done, he wanted "nothing to do with this mess." Tr. II at 318.

{¶13} Angela Briere testified, in January, 2018, she and Appellant were in a relationship, which began in mid-November, 2017. Briere was aware Appellant and his wife, Lakisha, were married, but separated, at the time. On January 13, 2018, Briere and Appellant were hanging out with one of Lakisha's brothers, Antonio Rosser, and his girlfriend, who is also the mother of his children. At the end of the evening, Briere, Appellant, and Rosser drove Rosser's girlfriend to Lakisha's daughter's house. A U-Haul truck with a trailer attached was parked in front of the house. Appellant became visibly upset and began to cry when he observed the U-Haul. Briere explained Appellant was upset because he knew Lakisha was leaving Ohio with their son.

{¶14} Briere and Appellant dropped off Rosser at Rosser and Lakisha's sister's house after midnight. Briere and Appellant drove around and returned to Appellant's residence sometime between 2 and 3 a.m. Briere went to sleep for approximately two hours. Appellant woke Briere around 5 a.m., stating he wanted to see if the U-Haul was still at Lakisha's daughter's house.

{¶15} Briere and Appellant entered a black 2017 Chevrolet Colorado, which Appellant was borrowing from his mechanic. Briere drove while Appellant sat in the passenger's seat. As Briere and Appellant traveled I-77 North toward Lakisha's daughter's house, Appellant observed the U-Haul and trailer traveling southbound on I-77. Appellant yelled at Briere to get off at the next exit and follow the U-Haul. She complied and eventually caught up with the U-Haul near Canton. After following the U-

Haul for a short period of time, Appellant instructed Briere to get next to the vehicle so he could see who was driving. As Briere drove alongside the U-Haul, Appellant rolled down the passenger side window and fired five shots at the U-Haul. Briere recalled Appellant used a black handgun which he had removed from his waist. Briere immediately exited the highway, explaining she "began to panic". She stopped at a gas station to take a break.

{¶16} Thereafter, Briere and Appellant proceeded to Appellant's friend Steve's house in Springfield Township, where they spent the majority of the day. Appellant contacted his mechanic in order to get back his car, a white Cavalier, and return the Colorado. Appellant removed "a big purse" from the back of the Colorado, which, according to Briere, contained three guns including the black handgun used in the U-Haul shooting. Appellant left the purse at Steve's house. After Briere and Appellant left Steve's house, they travelled to a Steak 'n Shake restaurant in Tallmadge. They were arrested later that evening by Tallmadge police.

{¶17} Briere was held at the Tallmadge Police Department for a couple of hours. When she was released, she returned to Steve's house. McGowan picked up Briere and brought her to his apartment. Briere gathered the purse prior to leaving Steve's house. Upon arriving at McGowan's apartment, Briere and McGowan opened the purse, and found one of the three guns was missing. They returned to Steve's house and retrieved the third gun. McGowan subsequently placed the three weapons in a lockbox.

{¶18} Briere acknowledged she and Appellant talked about the guns during their phone conversations while he was in Summit County Jail. Appellant instructed her to sell one of the guns and use the money from the sale to get his vehicle out of impound. Briere

sold the gun, but after getting Appellant's vehicle out of impound, she left the area. She contacted Trooper Daley approximately a week and a half after the incident.

**{¶19}** Michael Roberts, a forensic scientist in the firearms department of the BCI, testified he received one fired bullet, a Taurus .380 auto caliber semiautomatic pistol, and three unfired cartridges related to the instant matter. Roberts examined the pistol and found it to be operable. Roberts also examined the fired bullet which Trooper Daley extracted from the U-Haul. Roberts opined the bullet was fired from the black Taurus pistol which was recovered from Adam McGowan's residence.

**{¶20}** Upon conclusion of Roberts' testimony, the state rested. Appellant did not call any witnesses on his behalf, but moved for a Crim. R. 29 acquittal which the trial court denied. After hearing all the evidence and deliberations, the jury found Appellant guilty of the counts contained in the Indictment.[1] The trial court conducted a sentencing hearing on May 7, 2018, and imposed an aggregate prison term of 52 years.

**{¶21}** It is from these convictions and sentence Appellant appeals, raising the following assignments of error:

I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE JAILHOUSE INTERROGATION AND APPELLANT WAS PREJUDICED BY THE STATEMENT'S ADMISSION AT TRIAL.

II. THE COURT ERRED BY NOT ALLOWING APPELLANT TO ADDRESS HIS DISPUTES WITH TRIAL COUNSEL FOR THE RECORD.

---

[1] The state dismissed the menacing by stalking count prior to trial.

III. INSUFFICIENT EVIDENCE WAS PRESENTED AT TRIAL TO EACH ELEMENT OF THE CRIMES ALLEGED AND THE COURT ERRED IN DENYING APPELLANT'S RULE 29 MOTION AND SUBMITTING THE CASE TO THE JURY.

IV. THE MANIFEST WEIGHT OF THE EVIDENCE AT TRIAL SUPPORTED ACQUITTAL AND THE JURY FUNDAMENTALLY LOST ITS WAY IN RETURNING GUILTY VERDICTS.

I.

**{¶22}** In his first assignment of error, Appellant challenges the trial court's denial of his motion to suppress the jailhouse interrogation. Appellant adds he was prejudiced by the admission of the statement at trial. Specifically, Appellant argues he was in custody when Trooper Daley interviewed him on January 17, 2018, while he was incarcerated in the Summit County Jail, and he should have been advised of his *Miranda* rights.

**{¶23}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726 (1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing

an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra*.

**{¶24}** In its April 27, 2018 Judgment Entry denying Appellant's motion to suppress, the trial court concluded, based upon the totality of the circumstances, Appellant was not in custody within the meaning prescribed by *Miranda*. We agree.

**{¶25}** A review of the transcript of the suppression hearing reveals Appellant was escorted by deputies to a conference room at the Summit County Jail, where he was being held on unrelated charges. Trooper Daley identified himself, advised Appellant he was not under arrest, had the right to remain silent, and could ask to leave and end the conversation at any time. All the while, Appellant was talking over Trooper Daley as he was speaking. Appellant sat across from Trooper Daley and Trooper Kanters, who was assisting in the investigation, at a round table. Appellant was not physically restrained in any manner. The questioning lasted between 30 and 40 minutes. Under the totality of the circumstances, we find Appellant was not in custody for *Miranda* purposes and the trial court did not err in denying his motion to suppress.

**{¶26}** Assuming, arguendo, the trial court erred in denying Appellant's motion to

suppress, we find any error in doing so to be harmless. "Any error in ruling on a motion to suppress evidence is 'necessarily harmless' when the evidence sought to be suppressed is not offered in evidence against the defendant." *State v. Thomas,* 2d Dist. Clark No. 2014–CA–141, 2015–Ohio–4121, ¶ 9, citing *State v. Phillips,* 75 Ohio App.3d 785, 788, 600 N.E.2d 825 (2d Dist. 1991). As noted, supra, the audiotape of Appellant's statements to Trooper Daley was not played at trial.

**{¶27}** Appellant's first assignment of error is overruled.

II

**{¶28}** In his second assignment of error, Appellant argues the trial court erred in not allowing him to address his disputes with trial counsel on the record. Appellant submits he attempted to discuss trial counsel's deficiencies with the trial court, however, the trial court refused to listen to him. He contends, as a result, he was denied his right to a fair trial and denied the effective assistance of counsel. We disagree.

**{¶29}** In order to prevail on a claim of ineffective assistance of counsel, a defendant "must satisfy a two-prong test." *State v. Kennard,* 10th Dist. No. 15AP-766, 2016-Ohio-2811, ¶ 14, citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the first prong, a defendant must "demonstrate that his trial counsel's performance was deficient." *Id.* If a defendant "can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance." *Id.* A defendant's "failure to make either showing defeats a claim of ineffective assistance of counsel." *Id.,* citing *State v. Bradley,* 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), quoting *Strickland* at 697, 104 S.Ct. 2052.

**{¶30}** In order to demonstrate deficient performance by counsel, a defendant

"must show that his counsel committed errors which were so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at ¶ 15 (Quotations omitted). Further, a defendant "must overcome the strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance." *Id.,* citing *Strickland* at 689. In order to show prejudice, a defendant "must establish there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different." *Id.,* citing *Strickland* at 689.

{¶31} Appellant points to three occasions during trial when the trial court refused to provide him with an opportunity to demonstrate the breakdown of the attorney-client relationship.

{¶32} The first occasion occurred during Trooper Daley's direct examination. Trial Tr., Vol. II at 331-335. The state introduced phone calls to and from Appellant while he was in Summit County Jail and was about to play them for the jury. Attorney April Bible, counsel for Appellant, informed the court, outside the presence of the jury, Appellant wished to address the court directly. Attorney Bible indicated Appellant was dissatisfied with her explanation of why a particular jail call was admissible. The trial court allowed Appellant to speak. Appellant claimed he did not have full access to all of the jail calls. As the discussion progressed, it became clear the state had, in fact, given defense counsel all of the jail calls, both in full and in redacted form. One jail call was not summarized in the police report Appellant reviewed. Attorney Bible indicated she had given Appellant the opportunity to listen to all of the calls. Appellant clearly chose not to listen to all of the calls. Satisfied, the trial court returned the jury to the courtroom and the

state continued its examination of Trooper Daley.  Appellant, however, was "not finished talking" and advised the trial court of this fact.

{¶33}  The second occasion ensued at the close of the state's case. Trial Tr., Vol. III at 488-4489. Appellant questioned the trial court regarding an answer Angela Briere gave during her testimony, which he claimed was a blatant lie. Appellant stated he felt the jury should know the truth about where Briere and he dropped Antonio Rosser off the evening before the shooting.  The trial court informed Appellant defense counsel could argue that fact during closing arguments.  Appellant then complained defense counsel was not calling Antonio Rosser as a witness.  The trial court did not respond to Appellant.

{¶34}  The third occasion transpired after the admission of the evidence. Trial Tr., Vol. III at 506-511.  Appellant questioned why he was not permitted to confront two of his accusers, Lakisha and their son. The trial court indicated it could not discuss evidence with him.  Appellant persisted.  The trial court told Appellant it did not want to hear anything further.  Appellant proceeded to talk with the deputies.  The trial court admonished him.

{¶35}  Upon review, we find the trial court did not violate Appellant's right to a fair trial.  The trial court did not "ignore" Appellant.  The trial court gave Appellant its attention, but adhered to its judicial role.  We find the trial court properly maintained control over the courtroom and refused to allow Appellant to interfere with the judicial process.  With respect to Appellant's claim he was denied the effective assistance of counsel, we find, assuming, arguendo, counsel's performance fell below an objective standard of reasonable representation, Appellant has failed to establish a reasonable probability, but for counsel's errors, the results of the proceedings would have been different.  As

discussed, infra, the state presented substantial evidence of Appellant's guilt.

**{¶36}** Appellant's second assignment of error is overruled.

III, IV

**{¶37}** In his third assignment of error, Appellant contends his convictions were not based upon sufficient evidence and the trial court erred in denying his Crim. R 29 motion for acquittal. Appellant asserts the state's case established Trooper Daley failed to thoroughly investigate the U-Haul shooting and merely targeted Appellant, dismissing all other possible leads; and the state's main witness, Angela Briere, lacked credibility and her testimony contradicted the testimony of Thaddaeus Rosser. In his fourth assignment of error, Appellant challenges his convictions as against the manifest weight of the evidence. Appellant argues "[t]here was a dearth of evidence at trial corroborating the State's case." Brief of Appellant at 16-17.

**{¶38}** Criminal Rule 29(A) provides a court must order the entry of a judgment of acquittal on a charged offense if the evidence is insufficient to sustain a conviction on the offense. Crim. R. 29(A). However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman,* 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. Thus, a motion for acquittal tests the sufficiency of the evidence. *State v. Tatum,* 3d Dist. Seneca No. 13-10-18, 2011-Ohio-3005, 2011 WL 2448972, ¶ 43, citing *State v. Miley,* 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist. 1996).

**{¶39}** When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe,* 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 47. Sufficiency is a test of adequacy. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Accordingly, the question of whether the offered evidence is sufficient to sustain a verdict is a question of law. *State v. Perkins,* 3d Dist. Hancock No. 5-13-01, 2014-Ohio-752, 2014 WL 855870, ¶ 30, citing *Thompkins* at 386, 678 N.E.2d 541.

**{¶40}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered'." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶41}** "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

**{¶42}** As set forth in our Statement of the Case and Facts, supra, the testimony at trial revealed Appellant and his girlfriend were driving northbound on Interstate 77 when Appellant observed the U-Haul travelling in the opposite direction. Appellant yelled at Briere to exit the highway and follow the U-Haul. When Briere had the U-Haul in sight, Appellant instructed her to pull alongside of it. Appellant rolled down the passenger

window, removed a black handgun from his waist, and fired, what Briere believed to be, five shots at the U-Haul. Briere subsequently brought the black handgun and two others owned by Appellant to McGowan's apartment. Trooper Daley recovered the gun during his search of McGowan's apartment. BCI testing established the bullet extracted from the U-Haul was fired from the black Taurus pistol recovered from McGowan's residence. During the jail house calls between Appellant and Briere, the two discussed disposing of the black handgun, selling another gun, and the circumstances around the U-Haul shooting.

**{¶43}** The jury was free to accept or reject any and all of the evidence offered by the parties and assess the credibility of the witnesses. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render [a] defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. McGregor,* 5th Dist. Ashland No. 15–COA–023, 2016–Ohio–3082, 2016 WL 2942992, ¶ 10, citing *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar. 23, 2000). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.*

**{¶44}** Our review of the entire record reveals no significant inconsistencies or other conflicts in the state's evidence which would demonstrate such a lack of credibility of any individual witness that caused the jury to lose its way in reaching its verdict. Based upon the foregoing, we find Appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence.

**{¶45}** Appellant's third and fourth assignments of error are overruled.

**{¶46}** The judgment of the Stark County Court of Common Pleas is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Baldwin, J. concur