[Cite as *State v. Gill*, 2025-Ohio-2181.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| Plaintiff - Appellee | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. Kevin W. Popham, J. |
| -vs- | : | |
| | : | |
| STEPHEN VINCENT GILL, | : | Case No. 2024CA00136 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:           Appeal from the Stark County Court
of Common Pleas, Case No. 2024
CR 0442

JUDGMENT:           Affirmed

DATE OF JUDGMENT:           June 20, 2025

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER A. PIEKARSKI
STARK COUNTY PROSECUTING
  ATTORNEY'S OFFICE
110 Central Plaza South, Ste. 510
Canton, OH  44702-1413

For Defendant-Appellant

D. COLEMAN BOND
116 Cleveland Ave., NW, Ste. 600
Canton, OH  44702

*Montgomery, J.*

## STATEMENT OF THE FACTS AND THE CASE

**{¶1}** A.M. is the owner of Crown Motors of Perry, a used car dealership located in Perry Township. On February 23, 2024, a man presented A.M. with a copy of R.M.'s driver's license and took a 2009 Chevy Tahoe ("Tahoe") for a test drive. *Trial Transcript ("T.T.")*, p. 158. The Tahoe was not returned to the dealership and A.M. called Perry Police Department and made a report. *Id.*, p. 159.

**{¶2}** On February 26, 2024, A.M. found the Tahoe parked in a gravel lot located in the area of Fourth St. and Brown Ave. in Canton. *Id.*, p. 160. A.M. notified police that she found the Tahoe and Appellant was possibly with the Tahoe or in the Tahoe. *Id.*, pp.175, 203, 205. The police officer looked up Appellant's name and discovered he had active warrants for his arrest. *Id.*, p. 203. Two cruisers were then dispatched to the lot. *Id.* When the police arrived at the lot, there were several individuals surrounding the Tahoe who ran upon seeing the police. One of the individuals who ran from the Tahoe was Appellant. *Id.*, p. 176. The police pursued Appellant and deployed a K9 officer who apprehended him. *Id.*, p. 178. The police officer asked Appellant, "If he had anything on him that he shouldn't have." *Id.* Appellant responded, "Just that." *Id.* The officer then removed a wallet from Appellant's pocket. The police officer went through the contents of the wallet and found an identification card for R.M. in the wallet. *Id.*, p. 186. The police officers helped Appellant to his feet and Appellant said, "My bad guys. I had to take a shot." *Id.*, p. 180. Appellant repeated this statement when he was placed in the back of the police cruiser. *Id.*

{¶3} The VIN number of the Tahoe taken from A.M.'s car dealership on February 23, 2024, matched the Tahoe recovered from the gravel lot on February 26, 2024. *T.T.,* p. 205.

{¶4} While the Tahoe was parked in the gravel lot, the police did an inventory search and found three cell phones, a phone charger and a knife. *Id.*, p. 181. The police officer placed the items on the hood of the Tahoe and Appellant responded from the back of the cruiser that the three cell phones belonged to him. *Id.*

{¶5} Appellant was charged with receiving stolen property in violation of R.C. 2913.51(A)(C), theft in violation of R.C. 2921.31 (A)(B)(2), and obstructing official business in violation of R.C. 2921.31 (A)(B).

{¶6} Appellant was arraigned on March 22, 2024, and entered pleas of not guilty to the charges in the indictment.

{¶7} Appellant filed a Motion to Suppress on April 24, 2024, and a suppression hearing was held on May 20, 2024. The trial court issued a Judgment Entry on July 12, 2024, that denied Appellant's motion.

{¶8} Appellee filed a request to nolle prosequi the theft charge that was granted by the trial court on May 30, 2024.

{¶9} A jury trial was held on July 17, 2024, and Appellant was found guilty of receiving stolen property and obstructing official business.

{¶10} A restitution hearing was held on July 23, 2024, and Appellant was ordered to pay restitution to the victim in the amount of $4,500.00.

{¶11} The trial court entered a Judgment Entry finding Appellant guilty and imposing sentence on July 29, 2024.

**{¶12}** Appellant filed a timely appeal and asserts six assignments of error.

**{¶13}** "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTIONS MUST BE REVERSED."

**{¶14}** "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AND MUST BE REVERSED."

**{¶15}** "III. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION."

**{¶16}** "IV. THE APPELLANT WAS DENIED A FAIR TRIAL BY THE TRIAL COURT'S DENIAL OF HIS REQUEST FOR A MISTRIAL, AND BY THE TRIAL COURT'S FAILURE TO GIVE A CURATIVE INSTRUCTION."

**{¶17}** "V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OVERRULING APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT MADE WHILE APPELLANT WAS IN CUSTODY."

**{¶18}** "VI. THE TRIAL COURT ERRED BY IMPOSING A $4,500.00 RESTITUTION ORDER WITHOUT SUFFICIENT EVIDENCE TO SUPPORT IT."

**ANALYSIS**

**{¶19}** Appellant asserts in his first assignment of error that Appellee failed to present sufficient evidence to sustain convictions of receiving stolen property and obstruction of official business.

**{¶20}** R.C. 2913.51(A) states, "No person shall receive, retain or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft offense." R.C. 2913.51(C) states that the offense is a felony of the fourth degree, "[i]f the property involved is a motor vehicle, as defined in section 4501.01 of the Revised Code."

**{¶21}** R.C. 2929.31 sets forth the offense of obstructing official business and provides:

(A)     No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

(B)     Whoever violates this section is guilty of obstructing official business. Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree.

**{¶22}** The Ohio Supreme Court held in *State v. Jenks*, 61 Ohio St.3d 259, ¶ 2 (1991), "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶23}** Appellant argues that Appellee failed to show that he received, retained or disposed of the Tahoe. *Appellant Brief*, p. 14. Appellant argues that Appellee failed to present sufficient evidence that Appellant operated or was a passenger in the Tahoe. *Id.*

Appellant argues that A.M. failed to identify him as the person who test drove the Tahoe on February 23, 2024. *Id.*

{¶24} A.M., the owner of Crown Motors of Perry, was asked during the trial to identify the person who test drove the Tahoe on February 23, 2024. A.M. stated that he was the person, "to the left of me, a striped button-down shirt." *T.T.*, pp.158, 159. Officer Wohlheter, one of the police officers on the scene on February 26, 2024, was asked during the trial to identify the person he saw running from the Tahoe and was apprehended. *Id.*, p. 176. Officer Wohlheter testified that the person was, "to the left of me in a striped shirt." *Id.*, p. 176. Counsel for Appellee followed the Officer's statement with, "Let the record reflect that the witness has identified the Defendant." *Id.* The court responded, "The record will so reflect." *Id.*

{¶25} The jury had sufficient evidence to make a finding that A.M. identified Appellant as the person who took and failed to return the Tahoe on February 23, 2024.

{¶26} Appellant argues that Appellee failed to present sufficient evidence that Appellant did any act that created a risk of physical harm to any person. *Appellant Brief*, p. 15. Appellant's attorney states in her opening statement that Appellant ran from police. "My client runs away deciding later that maybe it wasn't the correct choice, but he runs away in terror." *T.T.,* p. 151. Appellee also presented evidence that Appellant ran from the police. Officer Wohlheter testified, "[a]s we were moving into the vehicle, people began running southbound from the vehicle, at which point we pursued them, and we were able to observe Stephen Gill running." *Id.*, p. 177.

{¶27} "A person performs an affirmative act within the meaning of R.C. 2921.31 by fleeing from a police officer when the person has some knowledge that the police

officer intends to lawfully detain that person." *State v. Coffman*, 2024-Ohio-1182, ¶ 16 (1st Dist.).

**{¶28}** Officer Wohlheter testified that the dash camera on his cruiser was taping on February 26, 2024, as well as his body camera. *T.T.,* pp.176, 178. The dash camera video was introduced into the trial court record as Exhibit 2. The video shows Appellant running in front of the police cruiser and an officer yelling, "Don't fucking move!" The officer's body camera video was introduced into the trial court record as Exhibit 1. The body camera video shows an officer with his gun drawn while Appellant was being apprehended and an officer acknowledging that Appellant was injured and needed stitches. *Id.* Appellant created an affirmative act within the meaning of R.C. 2921.31 by fleeing from a police officer and he was in fact injured.

**{¶29}** This Court finds that in viewing the evidence in a light most favorable to the prosecution, the elements of receiving stolen property and obstructing official business were proven beyond a reasonable doubt. Appellant's first assignment of error is overruled.

**{¶30}** Appellant's argument that his convictions are against the manifest weight of evidence is without merit. Appellant cites *State v. Miller*, 2016-Ohio-8248 (5th Dist.) as his authority for his argument. *Miller* states, "In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the 'thirteenth juror,' and after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered."

**{¶31}** Appellant's argument that A.M.'s testimony was unclear and confusing is not supported by the court's record. Appellant acknowledges in his brief that A.M. testified that the man who took the Tahoe for a test drive on February 23, 2004, was the same person who was sitting in the courtroom to her left and wearing a striped button-down shirt. *Appellant Brief*, p. 19. Officer Wohlheter later describes Appellant as the "person to his left wearing a striped shirt". *T.T.*, p. 159. Counsel for the state specifically noted on the record that the man Officer Wohlheter was identifying was in fact the Appellant. *Id.* Officer Wohlheter and A.M. similarly described Appellant's clothing and location in the courtroom. There is nothing in the record to show that the jury was confused.

**{¶32}** Appellant's assertion in his brief that A.M testified that she gave the keys to R.M. on February 23, 2024, is untrue. A.M. responded affirmatively to the question, "So would it be a fair statement ma'am, as far as you were concerned, when you turned over the keys to the Tahoe, you believed that R.M. was taking your vehicle for a test drive." *T.T.*, p. 165. A.M's statement is that she "believed" the person was R.M., not that she gave the keys to R.M.

**{¶33}** Appellant has failed to show that the jury clearly lost its way or created a manifest miscarriage of justice.

**{¶34}** Appellant's argument in his third assignment of error that he received ineffective assistance of counsel in violation of his rights under the 6th and 14th amendments to the United States Constitution and Article 1, Section 10, of the Ohio Constitution fails to demonstrate deficient performance by his attorney or that he was prejudiced.

**{¶35}** "[I]n Ohio, a properly licensed attorney is presumed competent." State v. Gondor, 2006-Ohio-6679, ¶ 62.

**{¶36}** To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient (i.e. counsel's performance fell below an objective standard or reasonable representation), and (2) that counsel's deficient performance prejudiced the defendant (i.e., there is a reasonable probability that, but for counsel's errors, the proceeding's result would have been different). *State v. Weaver*, 2022-Ohio-4371, ¶ 48, citing *Strickland v. Washington*, 466 U.S. 667,668, and *State v. Bradley*, 42 Ohio St.3d 136,142 (1989).

**{¶37}** Appellant attempts to demonstrate to this Court that his trial counsel was deficient in her performance by failing to object to certain testimony and failing to request a curative statement. Appellant argues that testimony given by Officer Wohlheter was prejudicial and that his trial counsel should have objected to the testimony.

**{¶38}** During the trial, Officer Wohlheter was asked how Appellant was apprehended. Officer Wohlheter responded, "As he ran past our cruiser, our K9 officer was right behind us, and due to his active warrants and him running away, the K9 was released, and he was apprehended by the K9 shortly in between both cruisers." *T.T.*, p. 178.

**{¶39}** Counsel for Appellant addressed her failure to raise an objection to the Officer's statement in a sidebar where she stated, "Couple things I wanted to put on the record. First of all, the witness talked about the fact that my client had warrants. I didn't object to it because I feel it calls more attention to the testimony than I would like, but for purposes of the record, I would move for a mistrial." *Id.*, p. 182.

**{¶40}** *State v. Black*, 2024-Ohio-116, ¶ 12 (9th Dist.), found that "[e]ven if this testimony was impermissible other-acts evidence, trial counsel may decide, as a matter of trial strategy, not to draw attention to other-acts evidence by objecting to it." It is clear to this Court that Appellant counsel's trial strategy was to refrain from objecting to the officer's statement.

**{¶41}** The Ohio Supreme Court has held, "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *State v. Conway*, 2006-Ohio-2815, ¶ 103. *Conway* goes on to say, "[c]ounsel's decision not to request a jury instruction falls within the ambit of trial strategy." *Id.*, at ¶ 111. Conway also states, "[d]ebatable trial tactics do not constitute ineffective assistance of trial counsel." *Id.*

**{¶42}** Appellant has failed to show that his trial counsel's decision not to object to witness testimony or request curative instructions was either unreasonable trial strategy or prejudicial.

**{¶43}** Appellant argues in his fifth assignment of error that the trial court committed reversible error by overruling his motion to suppress. *Appellant Brief*, p. 26.

**{¶44}** "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Burnside*, 2003-Ohio-5372, ¶ 8.

**{¶45}** Appellant argues that his rights were violated when the police found the ID of R.M. in his wallet and asked him, "Who's this?" The trial court found that Appellant was in custody at the time of the question but that the purpose of the question was, "To find out who that - - who the ID belonged to because the county will not take IDs or cards that do not belong to the person being booked in." *Suppression Hearing Transcript*, p. 12. Appellant was not charged with any crimes based upon the fact that he had an ID that did not belong to him. *Id.* The trial court found that, "The question 'Who's this?', did not run afoul of Defendant's Miranda rights because it was wholly detached from the reason and purpose for which Defendant was in custody and was not reasonably likely or calculated to evoke an incriminating response from Defendant." *Judgment Entry*, pp. 5, 6.

**{¶46}** It should be noted that Officer Wohleter was never asked at trial about his question of "Who's this?" or Appellant's response to the question. This Court has held, "Any error in ruling on a motion to suppress evidence is 'necessarily harmless' when the evidence sought to be suppressed is not offered in evidence against the defendant." *State v. McGowan*, 2019-Ohio-2554, ¶ 26 (5th Dist.). This Court finds that the trial court did not commit reversible error by denying Appellant's Motion to Suppress Evidence filed on April 24, 2024.

**{¶47}** Appellant argues in his final assignment of error that the trial court did not have sufficient evidence to impose a $4,500.00 restitution order.

**{¶48}** The trial court held a restitution hearing on July 23, 2024, and Appellant was ordered to pay A.M. the sum of $4,500.00 on August 2, 2024.

**{¶49}** R.C. 2929.18 (A)(1) states,

Restitution by the offender to the victim of the offender's criminal offense or the victim's estate, in an amount based on the victim's economic loss. In open court, the court shall order that full restitution be made to the victim, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. At sentencing, the court shall determine the amount of restitution to be made by the offender. The victim, victim's representative, victim's attorney, if applicable, the prosecutor or the prosecutor's designee, and the offender may provide information relevant to the determination of the amount of restitution. The amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court imposes restitution for the cost of accounting or auditing done to determine the extent of economic loss, the court may order restitution for any amount of the victim's costs of accounting or auditing provided that the amount of restitution is reasonable and does not exceed the value of property or services stolen or damaged as a result of the offense. The court shall hold a hearing on restitution if the offender, victim, victim's representative, or victim's estate disputes the amount. The court shall determine the amount of full restitution by a preponderance of the evidence. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or the victim's estate against the offender.

**{¶50}** Appellant argues that the restitution amount of $4,500.00 exceeds the amount of economic loss suffered by the victim. *Appellant Brief*, p. 29. Evidence was presented at trial that the Tahoe had been damaged after Appellant took it from A.M.'s car dealership. Appellee submitted photos of the damaged Tahoe into the record. *State's Exhibits* 4A through 4G. At the restitution hearing, A.M. provided an estimate for repairs to the Tahoe that totaled $5,326.03 which exceeded the sticker price of $4,500.00. Appellant concedes in his brief that "[t]he vehicle was totaled." There was no evidence submitted that A.M. had insurance to cover the damages to the Tahoe.

**{¶51}** This Court has held in *State v. Handlin*, 2022-Ohio-4647, ¶ 58 (5th Dist.), "The evidence which supports a court's restitution order 'can take the form of either documentary evidence or testimony'". The Ohio Supreme Court has stated, "The court may base the amount of restitution on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information." *State v. Lalain*, 2013-Ohio-3093, ¶ 3.

**{¶52}** Based upon the foregoing, we find the trial court's order of restitution is supported by competent and credible evidence. The trial court based its decision on the testimony of the victim, photos submitted as evidence and a written estimate of repair costs. Appellant's sixth assignment of error is overruled.

## CONCLUSION

{¶53} Based on the foregoing, Appellant's first, second, third, fourth, fifth and sixth assignments of error are overruled. The Judgment Entry filed in Stark County Court of Common Pleas on July 29, 2024, is affirmed in all respects.

By: Montgomery, J.

King, P.J. and

Popham, J. concur.