[Cite as *State v. Kovach*, 2026-Ohio-171.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025CA00038 |
| Plaintiff - Appellee | Opinion & Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas of Stark County, Case No. 2024CR1685 |
| DOUGLAS SCOTT KOVACH, | |
| Defendant - Appellant | Judgment: Affirmed |
| | Date of Judgment: January 20, 2026 |

BEFORE: William B. Hoffman; Andrew J. King; David M. Gormley, Judges

APPEARANCES: Vicki L. DeSantis, Stark County Prosecuting Attorney's Office, Canton, Ohio, for Plaintiff-Appellee; George Urban, Canton, Ohio, for Defendant-Appellant.

*Gormley, J.*

{¶1} Douglas Kovach appeals his convictions for strangulation and assault that resulted from an altercation with K.W., who was his former girlfriend. Kovach raises three assignments of error, arguing that his convictions were against the manifest weight of the evidence, that he received ineffective assistance of trial counsel, and that the trial court erred by imposing certain community-control conditions. For the reasons explained below, we affirm the trial court's judgment.

**The Key Facts**

{¶2} During a visit to Kovach's home in August 2024, K.W. noticed that a computer there was logged onto her account on Chaturbate, which is a pornographic website offering live-streamed webcam performances by models and couples. At the

time, K.W. was earning some income through that site, which collects money from persons willing to pay to see certain sex acts.

{¶3} K.W. testified at Kovach's jury trial, and she told the jurors that she and Kovach argued after she asked why he was logged onto her account. During their argument, she said, Kovach placed both of his hands around her neck and strangled her, which inhibited her breathing. When she dropped to the ground to escape, Kovach kicked her. Then, she told jurors, Kovach grabbed her cellphone and broke it when she tried to call for help. He also slammed a door on her legs when she was trying to leave his home, she testified.

{¶4} K.W. was able to call for help, and the police officer who came to the home could see some injuries on her. When questioned by the officer, Kovach admitted that he had shut K.W.'s leg in the door while pushing her out of the house.

{¶5} K.W. was then examined at a hospital by a sexual-assault nurse examiner. That nurse documented extensive injuries consistent with strangulation and physical assault. K.W. had bruising on both sides of her neck and on her arms, back, and legs. Her voice was raspy, and she reported difficulty breathing.

{¶6} At his trial, Kovach testified in his own defense. He claimed that K.W. had attacked him while he was asleep and that he had acted in self-defense. He denied strangling K.W. or touching her neck. He characterized himself as a peacemaker and testified that he pushed K.W. and shut her leg in the door while trying to get her out of his home.

{¶7} The jury found Kovach guilty on both the felony strangulation charge and the misdemeanor assault charge.

**{¶8}** A presentence investigation followed, and the resulting report indicated that Kovach at the time described himself as a daily user of marijuana, which he said helped him to manage chronic pain. A urine-screen drug test administered at his presentence interview found THC but no other drugs or alcohol. The presentence report also documented minimal alcohol use, with Kovach reporting that he drank on rare occasions and that his last alcohol use had been in May 2024. (The presentence report was prepared in February 2025.)

**{¶9}** The trial court sentenced Kovach to three years of community control with conditions that directed him to abstain from the use of illegal drugs and alcohol and to not enter any bars or other businesses where the sale of alcohol is the primary source of revenue. Kovach now appeals.

## Kovach's Convictions Were Not Against the Manifest Weight of the Evidence

**{¶10}** In his first assignment of error, Kovach argues that his convictions were against the manifest weight of the evidence.

**{¶11}** In determining whether a conviction was against the manifest weight of the evidence, an appellate court acts as a thirteenth juror, and "after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be [reversed] and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The reversal of a conviction on manifest-weight grounds should occur only in "the 'exceptional case in which the evidence weighs heavily against the conviction.'" *Id*.

{¶12} "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them." *Thompkins* at 387 (emphasis in original) (quotations and citation omitted). "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

{¶13} We find that the jury's verdict was supported by substantial and credible evidence in the record and that the jury did not lose its way in finding Kovach guilty on the two charges.

{¶14} The alleged victim, K.W., testified that Kovach had strangled her by placing both of his hands around her neck and inhibiting her breathing. She testified that when she dropped to the ground to escape, he kicked her. She also told jurors that when she tried to call 9-1-1, Kovach took the phone from her and broke it, and he then pushed her and slammed her legs in a door as she tried to leave the home.

{¶15} K.W.'s testimony was corroborated by other evidence. The police officer who came to the scene saw that K.W. had visible injuries. Kovach admitted to that officer that he had shut K.W.'s leg in a door as he was shoving her out of his house. The nurse examiner testified, too, and she described for the jury the extensive injuries that she observed on K.W. at the hospital and explained how those injuries were consistent with K.W.'s account of the alleged crimes.

{¶16} The jury was entitled to weigh the credibility of the various witnesses and to resolve any conflicts in the evidence. The jury heard testimony from K.W., the police officer, the nurse, and Kovach himself. The jury had the opportunity to observe those persons' demeanor and to assess whether their testimony was consistent with the physical evidence, the medical records, and the photos presented during the trial. The jury was free to believe all, part, or none of any witness's testimony.

{¶17} A rational basis exists in the record for the jury's decision. The jury did not clearly lose its way in crediting the State's case over Kovach's testimony. This is not an exceptional case in which the evidence weighs heavily against conviction. Kovach's first assignment of error is overruled.

## Kovach's Trial Counsel Was Not Ineffective

{¶18} To establish ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

{¶19} The Supreme Court of Ohio has held that "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *State v. Conway*, 2006-Ohio-2815, ¶ 103. Further, "debatable trial tactics do not constitute ineffective assistance of trial counsel." *Id*. at ¶ 111. We must "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id*. at ¶ 101, quoting *Strickland* at 689.

{¶20} As we have previously observed, trial counsel may reasonably choose not to object as part of his or her trial strategy. *State v. Gill*, 2025-Ohio-2181, ¶ 40 (5th Dist.). And trial counsel is not ineffective for electing not to pursue every possible objection. *State v. Helmondollar*, 2024-Ohio-2077, ¶ 30 (5th Dist.) (where the court reasoned that trial counsel tactfully chose not to object to testimony in an effort to avoid calling attention to it). Indeed, objections tend to disrupt the flow of a trial and may be considered — by a juror — to be technical and bothersome. *State v. Scott*, 2007-Ohio-303, ¶ 71 (5th Dist.).

{¶21} Kovach first argues that trial counsel was ineffective by failing to object to what he describes as testimony about an uncharged sexual assault. The record reveals, however, that the jury heard no testimony suggesting that Kovach had committed such a crime. Rather, K.W. reported that Kovach made her uncomfortable by using her Chaturbate account without her permission to publish some photos online. Both the nurse and the police officer who testified at the trial clarified that no sexual assault had occurred. When potential confusion arose, the trial court provided curative instructions. Defense counsel's decision not to object to those clarifications was reasonable, as objecting and requesting further instructions would have drawn additional attention to matters unflattering to Kovach and might have emphasized the subject in jurors' minds. *See Helmondollar* at ¶ 30.

{¶22} Kovach also contends that his attorney was ineffective in responding to testimony about the Chaturbate website. The record demonstrates, though, that counsel's approach served legitimate strategic purposes. First, Kovach's trial counsel did not object when the State elicited testimony about Chaturbate during its case in chief. That decision not to object was reasonable because doing so would have drawn

additional attention to the subject. Further, defense counsel may have anticipated using that testimony as a foundation for a defense strategy. *See Gill* at ¶ 40.

**{¶23}** Indeed, counsel later elicited testimony from Kovach himself to establish that Chaturbate operates as a live-streaming platform and does not permit uploading of photos or pre-recorded videos. This testimony contradicted K.W.'s claim that Kovach was uploading content to her account. Counsel also used cross-examination of K.W. to suggest that Kovach did not possess her account password. That effort was likely aimed at trying to undermine K.W.'s assertion that Kovach was stealing money from her through her Chaturbate account. Defense counsel's approach reflected a reasonable trial strategy rather than deficient performance. We see no evidence of ineffective assistance in these efforts.

**{¶24}** Moreover, even were we to view defense counsel's work as deficient, Kovach has not shown any prejudice. The State presented substantial evidence of Kovach's guilt independent of the challenged testimony. K.W. testified that Kovach strangled her with both hands, making it difficult for her to breathe, and she said that he kicked her when she fell to the ground, smashed her phone when she tried to call for help, and slammed her legs in the door as she was leaving. Jurors heard, too, from the police officer about Kovach having admitted to shutting K.W.'s leg in the door while shoving her out of the house. And the nurse examiner documented extensive injuries that were consistent with the described strangulation and assault.

**{¶25}** Given the evidence presented by the State, Kovach cannot demonstrate a reasonable probability that the outcome would have been different absent the challenged aspects of counsel's performance. Kovach's second assignment of error is overruled.

## No Plain Error Is Reflected In the Community-Control Restrictions Imposed on Kovach by the Trial Court

**{¶26}** In his third assignment of error, Kovach claims that the trial court abused its discretion by ordering — as a condition of Kovach's community-control sentence — that he not use alcohol or any illegal drugs and that he stay out of any bars or other businesses where alcohol sales are the primary source of revenue.

**{¶27}** Notably, Kovach did not raise in the trial court any objections after the trial judge explained the various community-control conditions that Kovach was obligated to follow while under supervision in the case. An error "that was not called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court" is deemed forfeited absent plain error. *State v. Haudenschild*, 2024-Ohio-407, ¶ 15 (5th Dist.). Therefore, we review Kovach's community-control sentence solely for plain error.

**{¶28}** To constitute plain error, an error "must be on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection." *State v. Dunlap*, 2004-Ohio-6652, ¶ 34 (8th Dist.). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶29}** Under Ohio law, a sentencing court in a felony case in which a prison term is not mandated may impose a sentence that consists of "one or more community control sanctions." R.C. 2929.15(A)(1). As part of that kind of sentence, a trial court may impose conditions "that the court considers appropriate." *Id*. Sentencing courts "thus [have] broad discretion . . . in imposing community-control sanctions." *State v. Talty*, 2004-Ohio-

4888, ¶ 10.  And a sanction available to a sentencing court in a felony case includes "[a] term of drug and alcohol use monitoring."  R.C. 2929.17(H).

**{¶30}**  The authority to impose community-control conditions is not absolute.  *Talty* at ¶ 11.  Restrictions imposed as part of a community-control sentence "cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty."  *State v. Jones*, 49 Ohio St.3d 51, 52 (1990), citing *State v. Maynard*, 47 Ohio App.3d 76, 77 (6th Dist. 1988).  In determining whether a community-control condition is appropriate, courts must "consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation."  *Id*. at 53.

**{¶31}**  Ohio courts have generally required some nexus between an offender's crime and substance abuse to uphold drug- or alcohol-related community-control conditions.  *State v. Lynn*, 2023-Ohio-4429, ¶ 48-49, 54 (5th Dist.) (reversing as an abuse of discretion a marijuana ban where nothing in the record indicated that drugs or alcohol were involved in the crime).  *See, e.g., State v. Chavers*, 2005-Ohio-714, ¶ 12 (9th Dist.) (finding that a trial court had abused its discretion by imposing a no-alcohol term of supervision where the record contained no evidence that alcohol had played a role in the defendant's current or past crimes).

**{¶32}**  The record before the trial court included a presentence report documenting that Kovach uses marijuana daily to manage pain.  That report also quoted Kovach as saying that he rarely uses alcohol and had not done so for nine months.  As for the alleged crimes, nothing in the record suggests that drugs or alcohol played any role in the events

described by K.W., and the police officer who came to the scene did not testify about having seen any signs of impairment in Kovach.

**{¶33}** Under an abuse-of-discretion standard, the seeming lack of a nexus between the crimes and the use of alcohol or drugs by Kovach might very well prompt us to second-guess the trial judge's decision.  Yet, here, with our review focusing solely on any plain error because Kovach did not object to the conditions that he now decries, we see no plain error and so defer to the lines drawn by the trial court.

**{¶34}** That court had broad discretion to impose community-control conditions reasonably related to the goals of rehabilitation, administering justice, and ensuring good behavior.  *City of Cleveland v. Pentagon Realty, LLC*, 2019-Ohio-3775, ¶ 10, 13 (8th Dist.).  And our review of Kovach's drug-and-alcohol provisions "must be conducted 'with the understanding that the court will act reasonably at a revocation hearing, aware of the practicalities and fundamental goals of probation.'"  *State v. Ice*, 2024-Ohio-5341, ¶ 27 (7th Dist.), quoting *Jones*, 49 Ohio St.3d at 55.

**{¶35}** The sentence imposed by the trial court may be inconvenient at times for Kovach, but "a trial court can impose community-control sanctions that limit the offender's fundamental rights, provided that such limitations further the statutory goals of community control and are not overbroad."  *State v. Chapman*, 2020-Ohio-6730, ¶ 16.

**{¶36}** The trial court's decision to include the no-alcohol-or-drugs restriction and the ban on entry into businesses where alcohol sales are the focus did not trample on Kovach's substantial rights or impose a manifest injustice on him.  Kovach's professed voluntary avoidance of alcohol and illegal drugs that he described to the preparer of the presentence report suggests that the substance-use restriction is of little practical

consequence to him. As for the condition limiting his freedom to visit bars and liquor stores, we see no manifest injustice that could rightly be viewed as plain error. The restriction is not so exceptional or so inequitable as to require us to upend it. Kovach's third assignment of error is overruled.

{¶37} For the reasons explained above, the judgment of the Court of Common Pleas of Stark County is affirmed. Costs are to be paid by Appellant Douglas Kovach.

By: Gormley, J.;

Hoffman, P.J. and

King, J. concur.